Thank you, Your Honor, and I'd like to reserve three minutes for rebuttal. Can you see the clock from where you are? Yes, I can. Yes, it's on 10. Yes, exactly. Oh, wait a minute. It's on 15. We had identified 15 minutes. It was just changed to 15. It just changed to 15. 15 is the correct amount. But just keep an eye on that as it descends. I will. Thank you, Your Honor. May it please the Court, my name is Timothy Blood, and I represent the plaintiff and appellant, Ronald Gutierrez. This lawsuit seeks the recovery of a fee known as the tax service fee, charged for a service that was never rendered. It's uncontested at this point that Wells Fargo charged plaintiff a fee for a service that it did not provide and it never intended to provide to Mr. Gutierrez. Neither Wells Fargo nor any third party handled the payment of Mr. Gutierrez's tax payments. Instead, Mr. Gutierrez However, Counselor, I understand you do not claim breach of contract on appeal. That's correct, Your Honor. While you're there, let me ask you, is it uncontested that Wells Fargo never provided any service? I thought that in reading the papers in this case, that because your client paid his taxes directly, Wells Fargo, in order to protect its position, had to check to make sure taxes were paid and there were no existing liens, even after making the loan. Is that wrong? That is a fact that is not pled that Wells Fargo maintains, but it would be a question of fact that would not be appropriately dealt with on a motion to dismiss. Would it be because Wells Fargo's, the papers, including the HUD booklets, say this is a service that's going to be provided. Your contention is that by describing these as escrow services, they are misleading your client, who, of course, doesn't need to have them pay the taxes for him. I don't why, why is there a disputed fact here with respect to whether or not they fraudulently misled you? Well, there's no disputed fact about whether or not Mr. Gutierrez was misled or was told that it was charged this fee for a service that was not rendered. But, no, wasn't Mr. Gutierrez told that Wells Fargo charged this fee both to cover its cost through a third-party vendor in paying taxes and also to check to make sure that taxes were current so that no tax liens would be paid? No, he was not. The document that contains the definition of the tax service fee, according to RESPA, is the settlement booklet. And the settlement booklet says that the fee covers the cost of your lender engaging a third-party to monitor and handle payment of your property taxes. Monitor. So it's not even, and handle. Monitor and handle. So why, as I understand it, Wells Fargo needed to monitor the payment of your client's property taxes because if he failed to pay them, a tax lien would result and impair their security. Why wasn't he told precisely what they were charging for? Wells Fargo never told them, never told Mr. Gutierrez that they would be charging him for any monitoring of it. The only definition. But you just read me that monitoring. Go ahead. I'm sorry. But the statement says monitor and handle, not monitor or handle payment of taxes. So your case turns on whether and in this case is a conjunctive or disjunctive. Yes, in part. And one other sentence, too. You go ahead and answer the question, but I have another couple of questions here. And then the second sentence of the tax service fee definition states this is done to ensure that your tax payments are made on time and to prevent tax liens from occurring. That description describes what happens with escrowed accounts where the bank pays the tax fee, the taxes. It does not say. It's my understanding you're not contending in this case that the practice was fraudulent, correct? We're only looking for unlawful or unfair. That's correct. So we're really not talking about whether it was fraudulent. We're really not talking whether it's a breach of contract. And it's also my understanding that your complaint was dismissed with leave to amend, and you said you didn't want to amend, or at least you did not amend. You just appealed. That's correct. We did not amend. That's also true? Yes. All right. So I guess where I am, and I guess this is the question that I most want you to tell me, where do I look to find the HUD booklet, the booklet that you claim is what you're worried about, has anything to do with your, if you will, involvement with Wells Fargo? All I know is that the federal government requires Wells Fargo to give you a HUD booklet. All I know is you have a contract with Wells Fargo, but you don't plead breach. I don't find any place in the law that says that what's in this booklet is appropriate for Wells Fargo. I don't find any law, regulation, or whatever that suggests this HUD booklet has anything to do with this case. Look at it this way, Your Honor. If this was not a real estate case, a settlement services case, but I told you that I was going to ---- I don't want you to talk to me about that. Tell me what law, what regulation, what something, common law, state law, statutory law, serves as a reason that Wells Fargo has anything to do with the HUD booklet. Well, Wells Fargo is required to provide the HUD booklet pursuant to RESPA. So what? Even RESPA suggests, if I read it correctly, that these governing regulations disclaim any regulatory effect for the settlement cost booklet. And we're not looking for it. We're not suing under RESPA. We're not suing under any HUD regulation. What we're suing under are state law claims, because Wells Fargo ---- state law claim, that's a UCL claim, which is we're only under unlawful or unfair. And when we look at unlawful, I don't see anything that suggests that Wells Fargo must abide by what's in the HUD booklet. No, what Wells Fargo must abide by. Do they have to abide by anything in the HUD booklet? Yes. Is there any law or regulation or anything that suggests they need to? Yes. What? Yes. What? What law? What law? Cite it. What regulation? The RESPA regulations require accurate disclosures in the settlement statement, in the settlement cost booklet. And it requires a settlement cost statement to accurately list those charges. The tax service fee is defined in the settlement cost booklet. What part of those regulations do you want to refer me to that would suggest there is a violation thereof? Well, and, Your Honor, again, the case is not live. Come on. I don't want you to talk about it. Just refer me, because as far as I'm concerned, if you can't refer me to an appropriate regulation, you lose. 12 U.S.C. section 2604. All right. I'll look at it. Because I already saw that. But I don't think that covers your situation. And it's subsection A. And this case is different than other cases where the plaintiff sued under RESPA for RESPA violations. This is not a suit under RESPA for RESPA violations. This is a suit, for example, for the money hadn't received claim. If one pays somebody money for a service and that service is not provided, then one receives the money back. I'm sorry. Finish your answer. I'm sorry. And that is the core of this case. The HUD disclosure statements, they don't weaken the case. They don't immunize Wells Fargo from conduct that would otherwise be actionable in any other context. They, in fact, strengthen the case because they require accurate disclosure of what is being charged. That's the HUD one. And the settlement cost booklet defines those charges. And the glossary that defines the tax service fee is defined, and it is defined in terms of for purposes of escrowed accounts, not non-escrowed accounts. Counsel, on that point, I'm looking at ER-220, which is your settlement in HUD-1. And it purports to list various charges that are part of the closing. And I'm looking at line 806, tax service company, and there's an amount there, 76 in that particular case. And then there's a definition. Line 806 is the fee paid to a sex service provider for information on the real estate property taxes. What do we do with that? That statement, which is an example of a sample HUD-1, has to be read within the context of and has to jive with the definition of the tax service fee, which is in the glossary of that same document. And that's the one that says tax payments, ensure that your tax payments are made on time, that one? No, the tax service fee. The definition, which says that the fee is for, is to pay a third party to monitor and handle payment. Monitor and handle, right. Right, and to make sure that tax payments are made on time, which, of course, suggests that it's made on time. Not to monitor it to make sure that the tax payments were made on time, which is what Wells Fargo is talking about. Can we look at the two passages together, the tax service fee definition that you're relying on, and then the explanation in line 806 of the actual settlement document, which says provider for information on the real estate property taxes? Right. I think they have to be read together, and they have to be read consistently. And the part that you refer to, the line 806 part, obviously, in order to pay the taxes, the bank has to know how much the taxes are. And so they pay a service, the counties give them the tax information, and then they pay it. And that's how it works with escrowed accounts. And all of that's disclosed. And all of that's disclosed. So with non-escrowed accounts, with non-escrowed accounts, although they don't have to find out the amount and pay it, they need to go and make sure that you have paid the correct amount on time, correct? It's up to them to do so. Okay, it's up to them to do so, and if they don't do so, a tax lien may result impairing their security, correct? Yes, yes. And there are plenty of provisions that require, that allow Wells Fargo to demand both payment in the event of a delinquency from the loan, from the borrower, and also require the borrower to provide Wells Fargo with proof of payment. Yes, but that's not the issue here. The issue here is whether or not they have somehow violated the law by telling you that we charge for monitoring and making payments, and in your case, only monitoring applies, and we're going to pay somebody to make sure that you've made your payments on time. What's misleading about that? Well, that's not what the definition says. Well, no, the definition says monitoring and handling. If I hired you to drive me, buy me lunch, and take me to a ballgame, and you only drove me, I'd still have to pay you, wouldn't I? Right, but only a portion of it, because I should only be paid for the driving service. No, no. If your duties were all three and I only called on you to do one, I guess I'd still have to pay you, wouldn't I? Yes, but only for that portion of the job I performed. And, again, if Wells Fargo had in the settlement cost statement a payment for a tax verification service to non-escrowed accounts, Wells Fargo could certainly charge that fee, but it didn't. The definition of what's being charged is different, and that definition is what governs. Counsel, you're down to two minutes. If you wish to reserve, you may do so. Thank you. I reserve. Thank you. Very well. We'll hear from the bank. Mr. Kemp, I hope you can see your opposing counsel. I can now. I can now. Well, I guess we can't. Do you mind if we go? Oh, there we go. That's better. Now we have your opposing counsel in view. Very well. You may proceed, Mr. Kemp. Good morning, Your Honors. Eric Kemp for Appellees, and may it please the Court. I think this case is premised on a fundamental misunderstanding that tax service fees are equivalent to escrow functions. The problem with that theory is that there's nothing to support it. It's contrary to the case law, to the party's contracts, and to RESPA, which comprehensively regulates this area of law. And all of these sources of authority recognize that escrow services and tax service fees are not one and the same. Tax service fees can be charged both to borrowers with escrow accounts and without escrow accounts. Well, then what about the words monitor and handle? The word handle in particular is troublesome. Well, first of all, that's in a book that I think has been alluded to earlier. It is promulgated by HUD. It's published in the Federal Register. Wells Fargo has no control over its content, and HUD has specified itself that it lacks the force of law. But I think what HUD was trying to do with the words monitor and handle is define it as broadly as possible in this, for informational purposes, only sort of booklet that is supposed to break down various fees, including tax service fees, in a way that borrowers can understand. And there are instances in which handling will occur, even on loans that are originally not escrowed. What tax service vendors do on non-escrow loans is they monitor the tax records to ensure they're paid, and if they're not, they notify the lender or the servicer so the servicer can pay the fees. After that happens, the servicer is generally authorized under the security instrument to impose an escrow account going forward. So then in the future it will perform functions that are more directly related to the term handling. There's nothing, I think, in the tax or in the booklet or anywhere else that suggests that the lender must both monitor and handle taxes on all loans. How are the fees defined, not in the booklet, but in the contract? In the contract, they are Not the deed of trust, but the contract itself. You mean the promissory note? Well, or in the escrow agreement. I don't know if that's in the record, Your Honor. So when Mr. Gutierrez signs the papers, if you will, and let's put aside the deed of trust because that comes later, where are these fees referred to? They're referred to in both the HUD-1 disclosure statement. Right. Now, I'm talking about the agreement between you and Mr. Gutierrez. Well, I think the agreement is the deed of trust, and they're referred to there. Okay. But that occurs the deed of trust only becomes effective on closing, right? Yes. And the deed of trust, that's the only place they're referred to? Beyond the good faith estimate and the HUD-1 document, which are Right. The HUD-1 document goes to somebody earlier. Mm-hmm. And what does it say? What's the line where these fees are disclosed? It says line 806 is used to record the fee for any tax service. And tax information, right? Tax information, right, is the way it refers to, which is consistent with the deed of trust provision authorizing Wells Fargo to charge a one-time fee for reporting and verification services. Right. So I'm just trying to figure out what a borrower knows when he signs up with Wells Fargo, put aside what the HUD booklet says. He's gotten a good faith estimate which says there's a tax information fee of $76 or $66, right? Yes. What else does he get at the time? I know he gets a at some point he sees the deed of trust after the title report is done. But I'm not sure he sees that at the moment that he signs, that he signs the promissory note or agrees to get the loan, does he? I'm sorry. I didn't catch that wrong. The deed of trust isn't something that the borrower is going to see at this earlier point in the transaction. Generally not, no. Okay. So what else, what else when he signs on the dotted line does he see about this stuff? He gets the booklet. He has the, that line in the good faith disclosure. What else is there? I don't know if there's anything else from the record that they would necessarily receive regarding the tax service fees. But I think the HUD one is really the key document. That's what RESPA is, that's a document that under RESPA is designed to lay out all the various settlement charges. And it says tax information. Correct? It refers to as tax information. It says information on the real estate property taxes. Is that the reference?  Yes. 806 is the fee paid to a tax service provider for information on the real estate property taxes. Yes. And I would also point out that the booklet itself references that disclosure and describes it in the same way. All right. What do you do? That's page 220 of the excerpts. What about page 235, which is appendix, I assume it's the same document, the HUD one document, which has the definition of tax service fee, which is the argument that your opposing counsel is relying on, and covers the cost of your lender engaging a third party to monitor and handle the payment? Well, that's in the glossary of the settlement booklet. As has been pointed out already, that booklet lacks the force of law. It's controlled entirely by HUD, and Wells Fargo has no authority to change what's in there. It's not a regulation. It's not entitled to Chevron deference. There's nothing that suggests it should bind Wells Fargo in any way. But if it did, is it misleading? Is there anything here that violates California law? Let's assume that the booklet binds you. Does this accurately describe what you do? I think it does. I think that handling is ‑‑ I think plaintiffs are trying to equate handling with the payment of real property taxes, and that's not necessarily what it means. It could mean that the tax service company assists in the payment of real property taxes by gathering records, getting the amounts, getting the dates on which they must be paid in the various jurisdictions. But the actual handling of the escrow account is done by Wells Fargo, and that's clear also from the deed of trust, which has a separate section addressing escrow functions that is different than the tax service fee function of the deed of trust. So you charge a separate fee for handling the escrow account? They're not ‑‑ Wells Fargo didn't charge a separate fee in this case because there was no escrow. Was no escrow, yes, because there's ‑‑ Right. But the deed of trust ‑‑ But had there been an escrow account, you would have charged a separate fee for it? I don't believe so necessarily. It's only where permitted by law. I'm not confident that they do that in California. But you can charge a fee for escrow in addition to a tax service fee where permitted by law. Let me ask a slightly different question. I know that the HUD booklet doesn't have the force of law, although it was part of the information you gave to Mr. Gutierrez. Is the HUD 1 document, it's preprinted mostly. Could you have altered the description of the fees on it? The HUD document is mostly preprinted, and it's a form prescribed by HUD. I don't believe that they could have altered the description. Could you have added a separate one that said fee for making sure you pay your taxes on time in a shorter version than that? I don't think that Wells Fargo could have modified the substance of the HUD 1 form. Could it have offered a separate disclosure? Theoretically, that's possible, but I don't think it was under any obligation to do so. Let me ask one more question about this. I don't think in this case, and I'll ask your opponent this too, there's any allegation that there was an oral representation or that there was some, something misleading said in the negotiations. We're dealing solely here with the documents, are we not? That's my understanding. I don't believe there's anything alleged regarding an oral representation. I guess my next question is, it seems to me that counsel has already suggested that he's gotten rid of fraudulence, so I'm looking at lawful, and I took him very much down that line, and I don't think his complaint really suggests even what he responded in his answer. But let's look at unfair. The standard for determining what acts or practices unfair under the UCLA remains unsettled, says Graham. So I guess I'm trying to figure out in this particular instance whether it is unfair what happened in this particular case, given what you gave in the U in the HUD-1, and why that isn't at least something we should not get rid of on a motion to dismiss. It's not unfair, Your Honor, because both the parties' contracts and applicable law authorized Wells Fargo to charge the tax service fee. Essentially, what Wells Fargo is doing in charging us the contract itself. The deed of trust. And the deed of trust. All right. So the breach of contract, there is none. There is no breach. But he doesn't even allege that. What he's suggesting is that unfair is really, and as I read Graham, unfair is predicated on public policy. And so I guess I'm trying to figure out whether there isn't some at least regulatory provision which would suggest you ought to modify what you're saying in these particular matters such that somebody isn't led astray, as was this plaintiff. I'm not aware of any such regulatory provision, Your Honor, and I don't believe one has been cited. I'll further say that what Wells Fargo is effectively doing here is charging a one-time fee of $65 that covers the reporting and verification service for a 30-year loan term. So essentially, it's a little over $2 a year. And Mr. Blood alluded to the fact that Wells Fargo also has authority to request that the borrower submit proof of tax payments. But it didn't do that here. It charged the $2 a year in lieu of requiring Mr. Gutierrez to submit proof of payment twice a year, get stamps, mail that to Wells Fargo. He doesn't have to worry about any of that. And I don't think there's anything unfair about a $2 charge. Kennedy. But isn't that really an argument for a question of fact for a jury, not something to be determined on a motion to dismiss? What's my best precedent to suggest that even your good argument here is not appropriate for a motion to dismiss? There are a number of Ninth Circuit cases that do resolve the question of unfairness on a motion to dismiss. It is sometimes a question of fact, or perhaps even more generally a question of fact, but it's not always a question of fact. I think the Schroer case, 622F3rd, the pin site is 1045. Well, I understand the case, but give me the concept there. I mean, I'm trying to figure out a concept. Unfair. I'm glad I never had to interpret that in Idaho. It's not a very good, not a very easy law to affect. And I'm trying to figure out how one, on a motion-to-dismiss standard, putting everything in the light most probable for the plaintiff, that I can say it isn't unfair. Well, I think you have to go to me. It seems to me I've got to have some legal basis, haven't I, to get to the unfair? If I'm just going to talk about, well, it might be or it might not be, I'm in kind of a trouble. Well, the plaintiff has to plead plausible facts suggesting the practice is unfair. And I think if you look at the various tests, Your Honor mentioned the question is unsettled. It's not unfair under those tests. One of the tests is, is it tethered to some sort of legislative policy? And there's been nothing cited here that suggests it is. There's nothing that prohibits the charging. Unfair really becomes unlawful? No, but I think it's related to unlawful under the tethering prong. If you look at that test. The other test that is often applied is whether the benefit of the practice outweighs the harm. And, again, there's no harm that's actually been suggested here. It cost him, it will cost him $2 a year and he saved the inconvenience of having to submit proof of property taxes twice a year throughout the life of a loan. And it's also authorized, as we point out in our motion to dismiss, or I'm sorry, on our motion for judicial notice, by the Freddie Mac servicing guidelines also expressly recognize that the lender has this option in lieu of requiring proof of tax payments. So if it's authorized by the contract and Freddie Mac servicing guidelines and there's no law that prohibits it, I don't see how plaintiff could allege that it's unfair and I don't believe he has. Question on curiosity. Line 806 has a figure of $76, not $65. Was that an early estimate? What's the differential? I don't believe I have that page of the excerpt of record with me, Your Honor. I think it's page 220. It's the HUD-1 settlement. Oh, well, this is the sample. This is from the sample booklet that HUD mandates that Wells Fargo gives. So it's not the actual HUD-1 that was given to the borrower. Oh, this is, all right, this was not, this is from the booklet. It's not provided by Wells Fargo? Wells Fargo does provide a HUD-1, but this isn't the actual HUD-1. This is just the, a sample of the section of the HUD-1 that relates to these various closing costs. Is there an actual HUD-1 in this record? I don't believe there is, Your Honor. I can't remember. There's an allegation about a HUD-1, but I don't believe it's in the record. All right. Thank you, counsel. Your time has expired. Thank you, Your Honor. Mr. Blood, you have some reserve time. Thank you, Your Honor. The case boils down to whether or not Wells Fargo provided the service that it stated it was to provide on the settlement, on the HUD-1 settlement statement. And that settlement service is defined by the settlement cost booklet by law. Wells Fargo can, in fact, change the HUD-1 by applying to the department, now the Bureau. The HUD-1, as the sample indicates, also has blanks on it for additional settlement charges. And so, Wells Fargo, if it wanted to charge nearly a verification fee to non-espionage borrowers, it could have listed on the settlement statement a charge for that separately. If the line 806? If the HUD-1 said or rather than and, would you not have a case? Well, the second sentence is still problematic. I would have a tougher case. But the second sentence is still problematic because the second sentence of that definition implies that it's being done by the bank. Again, the second sentence doesn't say. Well, the second sentence says this is to ensure that your payments are made on time and to prevent tax liens from recurring. I'm not sure where's the implication there that they're doing it themselves and not using a third party. The reason is because if they can't verify payment before the payment's due, they can only verify payment after the payment is due. So after the date, after the payment date passes, Wells Fargo could go and verify whether or not the taxes have been paid. But that's not what the sentence says. The sentence says this is done to ensure that your tax payments are made on time, not were made on time. So if it says or or were, then you'd have no claim at all, right? You said or in the first sentence and were in the second one. Then you would have no claim. Okay. Counsel, I don't have the complaint in front of me. Was this a class action claim? Yes, Your Honor. Very well. Anything further? Nothing further. Your time has expired, Mr. Flood. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Smith, Hurwitz